HONORABLE ROBERT S. LASNIK

**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF WASHINGTON**

SOPHEARY SANH,

        Plaintiff,

v.

OPPORTUNITY, LLC, APPLIED DATA
FINANCE, LLC d/b/a PERSONIFY
FINANCIAL, and RISE CREDIT SERVICE
OF TEXAS, LLC d/b/a RISE,

        Defendants.

NO. 2:20-cv-00310

PLAINTIFF'S RESPONSE TO
DEFENDANTS' MOTION TO DISMISS
UNDER RULE 12(b)(6) OR, IN THE
ALTERNATIVE, TO STAY PENDING
ARBITRATION

NOTED ON MOTION CALENDAR:
July 10, 2020

**ORAL ARGUMENT REQUESTED**

BRESKIN | JOHNSON | TOWNSEND PLLC
1000 Second Avenue, Suite 3670
Seattle, Washington 98104  Tel: 206-652-8660

**TABLE OF CONTENTS**

I.    INTRODUCTION...............................................................................1

II.   FACTUAL ALLEGATIONS ................................................................2

    A. Defendants Solicited Sanh at Her Seattle Residence for Outrageous Loans......................................................................................2

    B. Plaintiff Timely Opted Out of Arbitration ...................................3

III.  LEGAL ARGUMENT ........................................................................3

    A. Standard of Review ....................................................................3

    1. Defendant RISE's Rule 12(b)(2) motion ......................................3

    2. Defendants' Rule 12(b)(6) motions ..............................................4

    B. Personal jurisdiction over RISE exists because it purposefully availed itself of the privilege of conducting business in Washington........................4

    C. Plaintiff's claims are not subject to arbitration because Plaintiff opted out of arbitration................................................................8

    D. Federal banking law does not preempt Plaintiff's non-usury claims against non-bank entities. ..................................................10

    1. Preemption requires Congressional intent. .................................10

    2. The express language of the Depository Institutions Deregulation & Monetary Control Act of 1980 (DIDA) does not preempt non-usury claims or claims against non-bank entities...................................................11

    3. The overwhelming weight of authority holds that Plaintiff's claims are not preempted under DIDA. ..................................................12

    4. The primary case relied upon by the Defendants is an outlier ....................17

    E. Plaintiff's CPA claims are plausible .........................................17

    1. RISE misconstrues Washington law and ignores the plain language of the complaint..................................................18

    2. Opportunity fails to apply well-established precedent .................20

    F. Plaintiff's Unjust Enrichment claim is plausible .....................22

IV.   CONCLUSION.................................................................................23

PLAINTIFF'S RESPONSE TO DEFENDANTS'
MOTION TO DISMISS UNDER RULE 12(b)(6) OR,
IN THE ALTERNATIVE, TO STAY PENDING
ARBITRATION - ii

BRESKIN | JOHNSON | TOWNSEND PLLC
1000 Second Avenue, Suite 3670
Seattle, Washington 98104  Tel: 206-652-8660

I.    **INTRODUCTION**[1]

In recent years, a growing number of predatory lenders have tried to avoid state usury laws by using rent-a-bank schemes whereby the state-regulated predatory lender uses a bank to originate loans that the predatory lender controls and derives the most significant economic benefit from.[2] The most financially insecure individuals and families in our communities are enticed into these rent-a-bank, predatory lending schemes, through the deceptive marketing that fails to disclose interest rates that can reach as high as 160%. Instead of providing a financial lifeline, these loans are often the catalyst to a never-ending debt cycle for tens of thousands of Washingtonians.

Ms. Sanh was one such individual. When she was financially vulnerable – having recently filed for bankruptcy and facing growing medical and household bills – Defendants sent her solicitation after solicitation for low dollar loans. Ms. Sanh applied for the loans through Defendants, not being told in the solicitations that the interest rates on those loans she was applying for were at or above 150%. Defendants' actions compounded Ms. Sanh's financial woes and made her difficult situation much worse.

This lawsuit targets Defendants' acts and practices of deceptively enticing financially insecure individuals and families into loans that trap them in never-ending debt cycles. They are members of a growing market of predatory entities that attempt to abuse federal law to avoid states' attempts to protect their financially vulnerable. Defendants are not banks and are not entitled to the protections afforded banks under federal banking laws. Their acts are precisely those that Washington's Consumer Protection Act was created to stop. Ms. Sanh alleges that Defendants' solicitations were

---

[1] Plaintiff submits this consolidated response to the Motions to Dismiss from Opportunity Dkt. No. 27 (Opportunity's Motion) and RISE Dkt. No. 31 (RISE's Motion).

[2] Amicus Brief of National Consumer Law Center and the Center for Responsible Lending supporting neither party in *David Petersen, et al v. Chase Card Funding, LLC, Chase Issuance Trust, and Wilmington Trust Company, as Trustee of Chase Issuance Trust* filed with the U.S. Western District Court of New York, Feb. 7, 2020 ("NCLC Amicus Brief").

BRESKIN | JOHNSON | TOWNSEND PLLC
1000 Second Avenue, Suite 3670
Seattle, Washington 98104  Tel: 206-652-8660

unfair and deceptive under the CPA and that the Defendants' role in a predatory rent-a-bank scheme also violated the CPA.

## II.    FACTUAL ALLEGATIONS

**A.    Defendants Solicited Sanh at Her Seattle Residence for Outrageous Loans.**

Plaintiff Sopheary Sanh left college with substantial federal student loans and medical debt, resulting in a Chapter 7 Bankruptcy. Dkt. No. 1-1 (Complaint) at ¶7-9. After her bankruptcy discharge, Defendants,[3] Opportunity, LLC ("Opportunity") and RISE Credit Service of Texas, LLC ("RISE") targeted Ms. Sanh with mail solicitations at her home in South Seattle. Each sent numerous solicitations to her Seattle residence. *Id.* at ¶¶10-11. RISE alone sent at least three separate solicitations to her home. *See* Declaration of Brendan Donckers at **Ex. 1-3**.

The solicitations Ms. Sanh received included bold language stating that she was "pre-approved" or "pre-qualified" for a loan "as soon as tomorrow." *Id.* at ¶¶12-14. But these solicitations omitted the outrageous interest rates and costs. *Id.* at ¶15. RISE's solicitations identified Ms. Sanh by name: "Sopheary, Life can be full of surprises…" Donckers Decl. at **Ex. 1**. RISE included its own customer service phone number in its solicitations and encouraged Ms. Sanh to contact RISE directly: "Reach out to RISE." *Id.* RISE invited her to "complete" her loan transaction on a website with a RISE domain name: "RISEcredit.com." *Id.* The website even includes Washington-specific information targeted to Washington consumers like Ms. Sanh. Donckers decl. at **Ex. 4**.

Opportunity solicited Ms. Sanh to enter into a loan agreement with a 159.15% interest rate. Complaint at ¶27. The $3,000 loan will cost Ms. Sanh $5,239.16. *Id.* at ¶28. Similarly, RISE solicited Ms. Sanh to enter into a loan agreement with an interest rate of 149.09%. *Id.* at ¶32. This $3,000 loan will cost Ms. Sanh $9,666.08. *Id.* at ¶33.

---

[3] Defendants' practice is sufficiently widespread that Opportunity removed the case to this Court under CAFA jurisdiction. *See* Dkt. No.1 ("Opportunity alone—even without including the other Defendants—has over 10,000 customers in Washington, who have borrowed more than $30,000,000.").

PLAINTIFF'S RESPONSE TO DEFENDANTS'
MOTION TO DISMISS UNDER RULE 12(b)(6) OR,
IN THE ALTERNATIVE, TO STAY PENDING
ARBITRATION - 2

Although Opportunity and RISE knew the actual costs of the loan, they intentionally withheld this information in their solicitations. *Id.* at ¶¶18-19.

## B.    Plaintiff Timely Opted Out of Arbitration

Opportunity asserts that its solicitations resulted in three separate notes, each replaced and superseded by the one before. The last note is the operative note which secures Ms. Sanh's debt. Dkt. No. 23-3 (McKay decl.) (Stating, at Par. 19, "This Note is the <u>final and complete</u> expression of the agreement between you and us.") (emphasis added). Opportunity admits that Ms. Sanh timely wrote stating she "would like to opt-out of the arbitration clause and not waive my rights to a fair jury trial" and she referenced the loan number in the operative third note. Dk. No. 23-4 (McKay decl.). Opportunity's contract states that the third note, which was admittedly subject to a timely arbitration opt-out, is the complete and final agreement between the parties.

## III.    LEGAL ARGUMENT

## A. Standard of Review

### 1.   Defendant RISE's Rule 12(b)(2) motion

When a defendant moves to dismiss under Rule 12(b)(2), the plaintiff bears the burden of demonstrating that jurisdiction is appropriate, after which the burden shifts to the defendant to demonstrate that jurisdiction is unreasonable. *Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 800 (9th Cir. 2004). "Where the motion is based on written materials rather than an evidentiary hearing, the plaintiff need only make a *prima facie* showing of jurisdictional facts." *Id.* Where there is conflict between the parties over statements in affidavits, it "must be resolved in the plaintiff's favor." *Schwarzenegger* at 800.

Consistent with FRCP 26, Plaintiff timely propounded broad interrogatories and requests for production in this case and Defendants have responded with broad objections and refused to produce any responsive documents. Donckers Decl. at ¶3. To the extent that the court considers the present motions to be based on questions of fact

PLAINTIFF'S RESPONSE TO DEFENDANTS'
MOTION TO DISMISS UNDER RULE 12(b)(6) OR,
IN THE ALTERNATIVE, TO STAY PENDING
ARBITRATION - 3

BRESKIN | JOHNSON | TOWNSEND PLLC
1000 Second Avenue, Suite 3670
Seattle, Washington 98104  Tel: 206-652-8660

1   or otherwise converts it to a FRCP 56 Motion, Plaintiff requests an opportunity to take
2   discovery. *Laub v. United States DOI*, 342 F.3d 1080, 1093 (9th Cir. 2003) (Where a
3   more satisfactory showing of the facts is necessary, more discovery is appropriate).

4        2.   Defendants' Rule 12(b)(6) motions

5        The Court cannot dismiss under Rule 12(b)(6) where the complaint alleges a
6   plausible claim for relief. *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S.Ct. 1937 (2009). A
7   claim has plausibility where the party seeking relief pleads factual content that allows
8   the Court to draw the reasonable inference that the defendant is liable for the misconduct
9   alleged. *Id.* This is not akin to a "probability requirement" but it asks for more than a
10  sheer possibility that defendant has acted unlawfully. *Id.*

11       All facts in support of a specific claim need not be pled to establish plausibility.
12  The Plaintiff's allegations must only set forth sufficient to facts to raise a reasonable
13  expectation that discovery will reveal evidence supporting a claim. *Aschroft*, 556 U.S. at
14  678; *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555-56, 127 S.Ct. 1955 (2007). The
15  complaint is considered in its entirety, without isolating each allegation in it for
16  individualized review. *Twombly*, 550 U.S. at 569, n. 14. The motion should be denied
17  where the claim may be supported "by showing any set of facts consistent with the
18  allegations in the complaint." *Id.* at 563.

19  **B. Personal jurisdiction over RISE exists because it purposefully availed itself
20      of the privilege of conducting business in Washington**

21       The Court's personal jurisdiction analysis begins with the long-arm statute of the
22  state in which the Court sits. *Glencore Grain Rotterdam B.V. v. Shivnath Raj Harnarain*
23  *Co.*, 284 F.3d 1114, 1123 (9th Cir. 2013). Washington's long-arm statute extends the
24  Court's personal jurisdiction to the broadest reach permitted under the due process
25  clause of the U.S. Constitution. *Schwarzenegger*, 374 F.3d at 800-01. Due process
26  grants jurisdiction over defendants who have certain minimum contacts with the forum
27  state. *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945). A three-part test is used

PLAINTIFF'S RESPONSE TO DEFENDANTS'
MOTION TO DISMISS UNDER RULE 12(b)(6) OR,
IN THE ALTERNATIVE, TO STAY PENDING
ARBITRATION - 4

BRESKIN | JOHNSON | TOWNSEND PLLC
1000 Second Avenue, Suite 3670
Seattle, Washington 98104  Tel: 206-652-8660

1
2
3
4
5
6

to determine whether the exercise of specific jurisdiction is appropriate:: (1) that the defendant has purposefully availed itself of the forum or purposeful 'minimum contacts' exist between the defendant and the forum state (2) that the "plaintiff's injuries 'arise out of or relate to' those minimum contacts;" and (3) that the exercise of jurisdiction "is reasonable, that is, that jurisdiction be consistent with notions of 'fair play and substantial justice.'" *Schwarzenegger* at 802.

7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22

A defendant purposefully avails itself of a forum when it takes affirmative action to allow or promote the transaction of business within the forum state. *Sher v. Johnson*, 911 F.2d 1357, 1362 (9th Cir. 1990). Marketing campaigns that target consumers in a forum through U.S. mail or by email constitutes purposeful availment. *Prater v. Staples the Office Superstore, LLC*, 2012 U.S. Dist. LEXIS 14827, *12-14 (W.D.Wash. Feb. 6, 2012); *see also Kawamura v. Boyd Gaming Corp.*, 2012 U.S. Dist. LEXIS 172512, *17-18 (D.Hawaii Dec. 5, 2012) (personal jurisdiction was proper based on defendant's marketing to and business derived from the forum); *Gordon v. Virtumundo, Inc.*, 2006 U.S. Dist. LEXIS 34095, *11-13 (W.D.Wash. May 24, 2006) (personal jurisdiction was proper based on commercial emails sent to and revenue generation from Washington consumers). Additionally, interactive websites, on which business may be transacted and users may exchange information with the host computer, generally support the imposition of personal jurisdiction. *Cybersell, Inc. v. Cybersell, Inc.*, 130 F.3d 414, 418 (9th Cir. 1997); *Washington v. www.dirtcheapcig.com, Inc.*, 260 F. Supp. 2d 1048, 1052 (W.D. Wash. 2003) ("[A] non-resident's maintenance of an interactive website through which consumers may purchase goods or services is sufficient to meet this element".).

23
24
25
26
27

Moreover, simply "placing goods into the stream of commerce with the intent that they will be purchased by consumers in the forum state can indicate purposeful availment." *J. McIntyre Mach., Ltd. v. Nicastro*, 564 U.S. 873, 881-82, 131 S. Ct. 2780. Indeed, a *single act* may be sufficient to support personal jurisdiction if it establishes a substantial connection to the state. *Authentify Patent Co., LLC v. Strikeforce Techs.*,

PLAINTIFF'S RESPONSE TO DEFENDANTS' MOTION TO DISMISS UNDER RULE 12(b)(6) OR, IN THE ALTERNATIVE, TO STAY PENDING ARBITRATION - 5

BRESKIN | JOHNSON | TOWNSEND PLLC
1000 Second Avenue, Suite 3670
Seattle, Washington 98104  Tel: 206-652-8660

*Inc.*, 39 F.Supp.3d 1139 (W.D.Wash. 2014); *see also Tech Heads, Inc. v. Desktop Service Center Inc.*, 105 F.Supp.2d 1142 (D.Or. 2000) (Defendant's online presence, print and television media campaign, and single transaction with a forum resident was sufficient to establish personal jurisdiction).

RISE is subject to specific personal jurisdiction because it purposefully availed itself of business in this jurisdiction by marketing and soliciting loans to Plaintiff at her address in Seattle. Complaint at ¶¶4-5. She alleges that RISE sent similar solicitations throughout King County and the state of Washington. *Id.* These solicitations generated revenue from Washington consumers in exchange for funds that were sent to consumers in this forum. Ms. Sanh alleged that as a result of RISE's solicitation, she entered into an agreement with FinWise Bank for $3,000 at an interest rate of 149.09%. *Id.* at ¶¶30-32. This loan will cost her $9,666.08. *Id.* at ¶33. She alleged that RISE was compensated for its efforts and for its participation in a scheme that solicited other Washington consumers through U.S. mail sent to the consumer's address encouraging them to enter into similar loan products. *Id.* at ¶¶34-35, 42.

Further, RISE's marketing efforts in Washington appear to be substantial, repeated, and widespread. RISE sent several mailings to Ms. Sanh's address throughout 2019. Donckers decl. at **Ex. 1**, **Ex. 2**, and **Ex. 3**. These mailings were sent specifically to Ms. Sanh's address in Seattle. *Id.* One of the mailings indicates that RISE had conducted such extensive analysis of Ms. Sanh's financial information that she was "pre-approved" for a $3,000 loan. *Id.* at **Ex. 1.** The solicitation was directed to Ms. Sanh personally: "Sopheary, Life can be full of surprises…" *Id.* RISE included a customer service phone number in the solicitation and encouraged Ms. Sanh to contact RISE directly: "Reach out to RISE." *Id.* RISE even invited her to "complete" her loan transaction on a website with a RISE domain name: "RISEcredit.com." *Id.* at **Ex. 1**.

These allegations exceed what is required to show purposeful availment. RISE does not dispute them. *See* Dkt. No. 31 at 4-6. It claims that it "could not have

PLAINTIFF'S RESPONSE TO DEFENDANTS' MOTION TO DISMISS UNDER RULE 12(b)(6) OR, IN THE ALTERNATIVE, TO STAY PENDING ARBITRATION - 6

BRESKIN | JOHNSON | TOWNSEND PLLC
1000 Second Avenue, Suite 3670
Seattle, Washington 98104  Tel: 206-652-8660

undertaken any of the purported wrongful acts that serve as the basis of the Complaint" because it was not FinWise Bank's "marketing vendor" and attaches a copy of a "Joint Marketing Agreement" with a third party, EF Marketing. *Id.* at 6. This is not a defense to personal jurisdiction and, if it were, should be subject to written discovery and deposition. RISE does not state that it did not solicit Ms. Sanh or that its solicitation did not cause her to enter into a loan agreement featuring outrageous interest rates. Ms. Sanh did not assert that RISE was FinWise's "marketing vendor" or that RISE entered into a "Joint Marketing Agreement" with FinWise Bank. Even if further discovery were to establish that RISE's assertions regarding EF Marketing are true, the use of a third party to help with its marketing efforts or distribution channels does not defeat a finding of purposeful availment. *See Tobin v. Astra Pharm. Prods., Inc.*, 993 F.2d 528, 544 (6th Cir. 1993); *Bou-Matic, LLC v. Ollimac Dairy, Inc.*, 2006 U.S.Dist. LEXIS 14543, *4 (E.D.Cal. 2006). The argument that use of a third-party somehow 'insulates' a defendant from a suit is baseless when the defendant clearly intends a product to reach the market in the forum state. *Prater v. Staples the Office Superstore, LLC*, 2012 U.S. Dist. LEXIS 14827 at *12-14.

Moreover, RISE's own communications discredit its assertion that a third-party – not RISE – solicited Ms. Sanh. At the bottom of the solicitation sent to Ms. Sanh, RISE included, not a reference to "EF Marketing, but to its own copyright. *Id.* There is no mention of "EF Marketing" anywhere. *See* Donckers decl. at **Ex. 1**. And RISE's interactive website is plainly used to market 'RISE-branded' loans to Washington consumers. *Id.* at **Ex. 4**. There is a Washington-specific webpage that advertises "An Online Loan in Washington" to Washington consumers under the "RISE" brand. *Id.* The website contains specific instructions on how to apply and indicates other jurisdiction-specific information: "in Washington, the loans can range from $500 to $5,000, and the terms range from 7 to 26 months." *Id.* Purposeful availment clearly exists here and the remaining factors are not addressed in RISE's brief.

PLAINTIFF'S RESPONSE TO DEFENDANTS'
MOTION TO DISMISS UNDER RULE 12(b)(6) OR,
IN THE ALTERNATIVE, TO STAY PENDING
ARBITRATION - 7

BRESKIN | JOHNSON | TOWNSEND PLLC
1000 Second Avenue, Suite 3670
Seattle, Washington 98104  Tel: 206-652-8660

RISE does not dispute the allegation that Ms. Sanh's claim arose from RISE's solicitations in Washington. RISE also does not address the reasonableness of litigating in Washington. It has also refused to respond to discovery regarding personal jurisdiction, including the scope and number of occasions on which RISE mailed solicitations across Washington. Donckers decl. at ¶3. Nonetheless, Ms. Sanh alleged that they were sufficiently widespread and numerous that joinder of all class members would be impractical. Complaint at ¶43. And her remaining allegations, taken with the attached evidence showing that RISE placed mailers into the stream of commerce with the intent that consumers would rely on those mailers and that it established a Washington-specific website, clearly show that RISE availed itself of this forum and maintained sufficient contacts with Washington consumers to warrant the exercise of personal jurisdiction over it.

## C. Plaintiff's claims are not subject to arbitration because Plaintiff opted out of arbitration

Defendant Opportunity (but not RISE) moved to compel arbitration. In order compel arbitration, the Court would have to determine (1) whether the parties entered into a valid agreement to arbitrate, and (2) whether the plaintiff's claims fall within the scope of that agreement. *Chiron Corp. v. Ortho Deagnostic Sys., Inc.*, 207 F.3d 1126, 1130 (9th Cir. 2000). "A court may order arbitration of a particular dispute only where the court is satisfied that the parties agreed to arbitrate *that dispute.*" *Granite Rock Co. v. Int'l B'hood of Teamsters*, 130 S.Ct. 2847, 2857-58 (2010) (emphasis in original). "Arbitration is strictly a matter of consent, and thus is a way to resolve those disputes— but only those disputes—that the parties have agreed to submit to arbitration." *Id.* (internal quotations and citations omitted). The party seeking to enforce an arbitration agreement "bears the burden of showing that the agreement exists and that its terms bind the other party." *Kwan v. Clearwire Corp.*, 2011 U.S. Dist. LEXIS 150145 (W.D. Wash. Dec. 28, 2011). The "presumption in favor of arbitrability" is a policy consideration

PLAINTIFF'S RESPONSE TO DEFENDANTS'
MOTION TO DISMISS UNDER RULE 12(b)(6) OR,
IN THE ALTERNATIVE, TO STAY PENDING
ARBITRATION - 8

BRESKIN | JOHNSON | TOWNSEND PLLC
1000 Second Avenue, Suite 3670
Seattle, Washington 98104  Tel: 206-652-8660

that "is no substitute for party agreement." *Granite Rock*, 130 S. Ct. at 2859. The court must decide whether the parties' agreement is "best construed to encompass the dispute." *Id.* at 2859-60.

Opportunity's motion fails because Plaintiff timely opted out of arbitration under the terms of the contract. "[A]rbitration is a matter of contract and a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit." *AT&T Techs., Inc. v. Communs. Workers of Am.*, 475 U.S. 643, 648, 106 S. Ct. 1415 (1986). The Court resolves arbitration clauses under "ordinary state-law principles that govern the formation of contracts." *First Options of Chi., Inc. v. Kaplan*, 514 U.S. 938, 944, 115 S. Ct. 1920, 131 L. Ed. 2d 985 (1995). Federal Courts apply the law of the state of the Plaintiff interpreting the contract. Washington law is unambiguous that a party cannot be required to arbitrate a dispute she has not agreed to arbitrate or has properly submitted an intend to opt out. *Satomi Owners Ass'n v. Satomi, LLC*, 167 Wn.2d 781, 810 (2009). Where there is a disputed question of fact regarding the opt out, Washington courts have considered those issues to be questions of fact. *Neuson v. Macy's Dep't Stores, Inc.*, 160 Wash. App. 786, 788 (2011). Here, Ms. Sanh timely submitted an opt-out stating that she "would like to opt-out of the arbitration clause and not waive my rights to a fair jury trial" and she specifically referenced the loan number in the third note and only operative note arising out of the loan solicited by Opportunity. McKay Decl. (Dkt. 23-4).

Opportunity argues that Plaintiff's opt-out is not effective because it pertains only to the third note and does not reference the first or second note. This argument fails under the plain language of the third note, which provides that it is the sole agreement between the parties. Indeed, Opportunity does not allege that the first and second note are operative other than for purposes of the arbitration clause. Opportunity fails to cite any authority for its theory that it can claw forward a superseded arbitration clause. Opportunity's sole case, *Krafczek v. Cablevision Sys. Corp.*, No. 17-CV-2915, 2018 U.S.

PLAINTIFF'S RESPONSE TO DEFENDANTS'
MOTION TO DISMISS UNDER RULE 12(b)(6) OR,
IN THE ALTERNATIVE, TO STAY PENDING
ARBITRATION - 9

BRESKIN | JOHNSON | TOWNSEND PLLC
1000 Second Avenue, Suite 3670
Seattle, Washington 98104  Tel: 206-652-8660

Dist. LEXIS 233543, at *15 (E.D.N.Y. Apr. 25, 2018), does not support the relief requested. In *Krafczek*, plaintiff enrolled for "Optimum" services in December 2014, which he cancelled in December 2016 and "his claims in this suit arise from charges he incurred in connection with that cancellation." Plaintiff re-enrolled for Optimum services in March 2017 and timely opted-out of the arbitration clause for that agreement. At issue before the Court was whether the March 2017 opt-out applied to the December 2014 arbitration agreement. The court noted that the basis of the lawsuit was the cancellation in December 2016, concluded that Plaintiff's decision to opt-out of a March 2017 arbitration provision had no effect on the agreement to arbitrate entered into in December 2014. *Krafczek* stands in sharp contrast to the present matter, where Sanh timely opted out of the operative note and Opportunity seeks to look back to prior superseded notes. And in any case, Ms. Sanh has not alleged a breach of contract and she has not brought suit under any note.

**D. Federal banking law does not preempt Plaintiff's non-usury claims against non-bank entities.**

    1.  <u>Preemption requires Congressional intent.</u>

The first and ultimate touchstone in deciding whether a federal law pre-empts a state statute is Congress' intent in enacting the federal statute at issue. *See Aguayo v. U.S. Bank*, 653 F.3d 912, 917 (9th Cir. 2011). The second touchstone "'[i]n all preemption cases, and particularly in those in which Congress has 'legislated . . . in a field which the States have traditionally occupied,' . . . [courts] 'start with the assumption that the historic police powers of the States were not to be superseded by the Federal Act unless that was the clear and manifest purpose of Congress.'" *Id.*

"Pre-emption may be either express or implied, and is compelled whether Congress' command is explicitly stated in the statute's language or implicitly contained in its structure and purpose." *Fidelity Federal Savings & Loan Assn. v. De la Cuesta*, 458 U.S. 141, 152-153 (1982) (internal citations omitted). Where a statute does not

PLAINTIFF'S RESPONSE TO DEFENDANTS'
MOTION TO DISMISS UNDER RULE 12(b)(6) OR,
IN THE ALTERNATIVE, TO STAY PENDING
ARBITRATION - 10

BRESKIN | JOHNSON | TOWNSEND PLLC
1000 Second Avenue, Suite 3670
Seattle, Washington 98104  Tel: 206-652-8660

expressly preempt a state law, a court may find preemption where the "federal law occupies a "field" of regulation "so comprehensively that it has left no room for supplementary state legislation." *Murphy v. NCAA*, 138 S. Ct. 1461, 1480 (2018).

    2. <u>The express language of the Depository Institutions Deregulation & Monetary Control Act of 1980 (DIDA) does not preempt non-usury claims or claims against non-bank entities.</u>[4]

DIDA was enacted to ensure that federally insured state-chartered banks would have the power to lend to out of state consumers at home state interest rates. Defendants argue that Section 27 of DIDA preempts all of Plaintiff's claims. RISE MTD at 13-16; Opportunity MTD at 14-18. The express language of DIDA clearly does not. Section 27 of DIDA states:

> In order to prevent discrimination against <u>State-chartered insured depository institutions</u>, …with respect to interest rates, <u>if</u> the applicable rate prescribed in this subsection exceeds the rate <u>such State bank …</u> would be permitted to charge in the absence of this subsection, <u>such State bank … may</u>, notwithstanding any State constitution or statute which is hereby preempted for the purposes of this section, take, receive, reserve, and charge on any loan or discount made, or upon any note, bill of exchange, or other evidence of debt, interest at a rate of not more than 1 per centum in excess of the discount rate on ninety-day commercial paper in effect at the Federal Reserve bank in the Federal Reserve district where such <u>State bank</u> or such insured branch of a foreign bank is located or at the rate allowed by the laws of the State, territory, or district where the bank is located, whichever may be greater.

12 U.S.C. § 1831d(a) (emphasis added).

Section 27 shows Congress's intent to protect a state-chartered bank's lending rights, but it <u>contains no mention of non-state bank entities or non-usury claims</u>. *See Meade v. Avant of Colo., LLC*, 307 F. Supp. 3d 1134, 1144-45 (D. Colo. 2018) (in the context of a motion for remand, holding 12 U.S.C. § 1831d only preempts usury claims against state banks, not non-bank entities). On the face of DIDA there is no basis to conclude that Congress expressly intended to preempt the conduct of third-party non-

---

[4] Plaintiffs cite to cases dealing with complete preemption as persuasive authority as they are instructive in this instance where field preemption is at issue. Complete preemption is different

PLAINTIFF'S RESPONSE TO DEFENDANTS'
MOTION TO DISMISS UNDER RULE 12(b)(6) OR,
IN THE ALTERNATIVE, TO STAY PENDING
ARBITRATION - 11

BRESKIN | JOHNSON | TOWNSEND PLLC
1000 Second Avenue, Suite 3670
Seattle, Washington 98104  Tel: 206-652-8660

1    bank entities.

2        3.   The overwhelming weight of authority holds that Plaintiff's claims are not
             preempted under DIDA.

3        Ms. Sanh alleges that RISE and Opportunity engaged in unfair and deceptive

4    marketing and a rent-a-bank scheme to take advantage of financially vulnerable

5    Washingtonians. She does not bring usury claims against banks and her claims are

6    therefore not preempted.

7        Whether DIDA or its national bank counterpart the National Banking Act (NBA)

8    preempts state law claims against entities other than federally insured banks is a factual

9    inquiry that has been evaluated under multiple competing doctrines. There is no

10   consensus from the Circuit courts, but many have focused on the "valid when made"

11   and "true lender" doctrines. *See Kaur,* 2020 U.S. Dist. LEXIS 31306, at *13-14. Others

12   have focused on who the "real party in interest" is or the nature of the plaintiff's claims

13   to determine if claims are preempted under DIDA or the NBA. *See e.g. In re Cmty. Bank*

14   *of N. Va. & Guar. Nat'l Bank of Tallahassee Second Mortg. Loan Litig.*, 418 F.3d 277,

15   285 (3d Cir. 2005); *Discover Bank v. Vaden*, 489 F.3d 594, 607 (4th Cir. 2007), *rev'd on*

16   *other grounds*, 556 U.S. 49 (2009); *Colorado v. Ace Cash Express, Inc.*, 188 F. Supp.

17   2d 1282 (D. Colo. 2002) (finding no complete preemption where bank and non-bank

18   defendants were separate entities and the claims related to non-bank defendants'.)[5]

19       The true lender or "de-facto lender" doctrine looks to the substance of the loan

20   and makes a determination regarding the applicable law by evaluating who has the

21

22   ───────────────
     [5] Many courts have reviewed multiple approaches and debated which doctrine applies. *See e.g. Madden*
23   *v. Midland Funding, LLC*, 786 F.3d 246, 250-53 (2d Cir. 2015) (discussing in all but name the "valid-when-
     made" doctrine and finding that it did not preempt consumer class action claim of usury and violation of
24   the FDCPA against a debt buyer who was the real party in interest); *Colo. ex rel. Meade v. Avant of Colo.*
     *LLC*, Civil Action No. 17-cv-00620-WJM-STV, 2017 U.S. Dist. LEXIS 218763, at *27 (D. Colo. Dec. 20,
25   2017) (explaining the "valid-when-made" doctrine and the "true lender" doctrine and finding that neither
     completely preempts state law claims made against third party assignees of usurious loans, even where
26   claims against the banks are preempted under DIDA); *Sawyer v. Bill Me Later, Inc.*, 23 F. Supp. 3d 1359,
     1367 (D. Utah 2014) (finding that under the "valid-when-made" doctrine the plaintiff's usury claims against
27   the non-bank defendant were preempted); *In re Rent-Rite Superkegs W.*, Ltd. 603 B.R. 41, 66 (Bankr. D.
     Colo. 2019) (finding that the non-bank assignee of a loan not usurious under DIDA was not liable for usury
     when assigned the loan.)

     PLAINTIFF'S RESPONSE TO DEFENDANTS'            **BRESKIN | JOHNSON | TOWNSEND** PLLC
     MOTION TO DISMISS UNDER RULE 12(b)(6) OR,      1000 Second Avenue, Suite 3670
     IN THE ALTERNATIVE, TO STAY PENDING            Seattle, Washington 98104  Tel: 206-652-8660
     ARBITRATION - 12

predominate economic interest in the loan, not whose name is on the loan. *Ubaldi v. SLM Corp.*, 852 F. Supp. 2d 1190, 1202 (N.D. Cal. 2012). The "real party in interest" approach, focus on the relationship between the non-bank defendants and the claims against the non-bank defendants to determine preemption. *See e.g. In re Cmty. Bank of N. Va.*, 418 F.3d at 296. The "valid when made" doctrine holds that if a loan is non-usurious when made, it cannot become usurious upon assignment. *Kaur,* 2020 U.S. Dist. LEXIS 31306, at *13-14.

District courts the Ninth Circuit have repeatedly engaged in a "true lender" or real party in interest analysis when faced with the preemption issue.[6] Whether or not the non-bank entity "is the true lender affects, among other things, preemption under the [NBA] and whether the choice of law provisions in the promissory notes are enforceable." *Ubaldi*, 852 F. Supp. 2d at 1202 (rejecting argument on a motion to dismiss that because a national bank was listed "as the lender on the loan documents, [the NBA] expressly preempts Plaintiff's state law claims" finding that the "imprimatur of a national bank on the loan documents" does not "automatically trigger[] preemption" and "foreclos[e] inquiry into the real nature of the loan, or whether the debtor may invoke the protection of state consumer laws if she proves that the actual lender in substance is not a national bank"); *see also Eastern v. American West Financial*, 381 F.3d 948, 957 (9th Cir. 2004) (applying the de-facto lender doctrine under Washington state law when deciding a choice of law issue).

This Court has explained that the NBA does not preempt Washington CPA claims against non-bank entities where the claims are of general applicability and do not significantly impact the bank's lending powers:

---

[6] Opportunity cites to *Piñon v. Bank of Am., NA (In re Late Fee & Over-Limit Fee Litig.)*, 741 F.3d 1022, 1025 (9th Cir. 2014), stating that it held "that usury claims regarding out-of-state credit card issues are preempted by the NBA and DIDA." Opp. MTD at 15. That is not true. The plaintiffs' claims in *In re Late Fee* were brought under DIDA and the NBA. *Id.* at 1025 ("Cardholders seek to recover under the remedial provisions of the National Bank Act and the [DIDA]." Preemption was not a part of the holding and was not discussed by the court.

> Defendants have not, however, identified which, if any, of them are national banks for purposes of the NBA. Nor have defendants engaged in the multi-step analysis necessary to determine whether a particular claim under state law is preempted.

*McDonald v. OneWest Bank, FSB*, No. C10-1952RSL, 2012 U.S. Dist. LEXIS 21449, at *4 (W.D. Wash. Feb. 21, 2012) (holing plaintiff's claims were not preempted).

> Fn.4 When determining preemption under the NBA, the Court first evaluates the object of the state law to determine whether its purpose is to regulate the relationship between national banks and borrowers. If it is, the law is automatically preempted under § 34.4(a). If, on the other hand, the law is one of general applicability, the Court must determine whether the law "only incidentally affect[s] the exercise of national banks' real estate lending powers." 12 C.F.R. § 34.4(b). <u>Laws of general applicability, such as the CPA, are not preempted unless plaintiff's use of the law will significantly impact the bank's lending powers.</u>

*Id.* at *4, fn.4 (emphasis added).[7]

Courts in every circuit, except the Eighth, have reached similar conclusions. *See e.g. In re Cmty. Bank of N. Va.*, 418 F.3d at 296 (finding preemption did not exist because: the "complaint asserted no claims against a national or state chartered federally insured bank," and "the complaint asserted no usury claims against any party under Pennsylvania law.") *Pennsylvania v. Think Fin., Inc.*, No. 14-cv-7139, 2016 U.S. Dist. LEXIS 4649, at *40; *Madden*, 786 F.3d 246, 250-53 (Second Circuit Court of Appeals finding that the non-bank purchaser of the loans was the real party in interest at the time of suit, the court held that there was not complete preemption.); *Discover Bank v. Vaden*, 489 F.3d 594, 607 (4th Cir. 2007), rev'd on other grounds, 556 U.S. 49 (2009) ("We emphasize again that our holding [that DIDA preempts plaintiffs' claims] only extends so far as a state-chartered, federally insured bank is the real party of interest with respect to the preempted state-court claims."); *Hood ex rel. Miss. v. JP Morgan Chase & Co.*, 737 F.3d 78, 90 (5th Cir. 2013) (finding the NBA did not preempt consumer protection claims against banks for unlawful fees regardless of whether the fees might fall within the definition of interest, because the complaint asserted no state

---

[7] RISE takes the Court's own words in *McDonald* out of context. RISE MTD at 11.

PLAINTIFF'S RESPONSE TO DEFENDANTS'
MOTION TO DISMISS UNDER RULE 12(b)(6) OR,
IN THE ALTERNATIVE, TO STAY PENDING
ARBITRATION - 14

BRESKIN | JOHNSON | TOWNSEND PLLC
1000 Second Avenue, Suite 3670
Seattle, Washington 98104  Tel: 206-652-8660

law usury claims and made no allegations regarding the rate of interest.); *Terry v. Cmty. Bank of N. Va.*, 255 F. Supp. 2d 817, 823 (W.D. Tenn. 2003) (Sixth Circuit district court finding deciding whether DIDA preempts state law claims at the dismissal stage was not appropriate and allegations regarding misrepresentations made during the course of extending loans sufficient to plead a cause of action for violation of the Tennessee's Consumer Protection Act.); *Eul v. Transworld Sys.*, No. 15 C 7755, 2017 U.S. Dist. LEXIS 47505, at *17-22 (N.D. Ill. Mar. 30, 2017)[8] (Seventh Circuit district court finding that despite the original lenders names on the loan documents were national banks, preemption at the 12(b)(6) stage was not appropriate because the true lender in the "rent a charter" scheme was not known and the assignees of loans are not entitled to preemption where they are not federally insured banks and the state law claims against them do not impact the banks ability to lend); *Flowers v. EZPawn Oklahoma*, Inc., 307 F. Supp. 2d 1191 (N.D. Okla. 2004) (Tenth Circuit district court finding no preemption of usury claims against non-bank entities who entered into a "sham relationship with banks. . . for the purpose of claiming federal preemption and evading state usury, fraud and consumer protection laws."); *BankWest, Inc. v. Baker*, 411 F.3d 1289 (11th Cir. 2005), reh'g granted, op. vacated, 433 F.3d 1344 (11th Cir. 2005), op. vacated due to mootness, 446 F.3d 1358 (11th Cir. 2006).

Here, the relationship between RISE and FinWise is not entirely clear, especially given RISE's argument that its only relation to FinWise is the loans are "RISE-branded." Dkt. No. 31 at 1, 3, 4. There is no evidence that the applicability of Ms. Sanh's CPA claims against RISE's predatory solicitation will impact FinWise's legal lending powers.

Similarly, the relationship between Opportunity and FinWise is ambiguous at this stage of the litigation. While Opportunity and the loan documents they sent Ms. Sanhh state that Opportunity is FinWise's "servicer," the actual nature of the relationship and who has the overriding economic interest in the loan is unclear. Dkt. No. 27 (Opportunity

---

[8] Neither the Seventh Circuit nor the First Circuit Court of Appeals has ruled on this issue yet.

PLAINTIFF'S RESPONSE TO DEFENDANTS'
MOTION TO DISMISS UNDER RULE 12(b)(6) OR,
IN THE ALTERNATIVE, TO STAY PENDING
ARBITRATION - 15

BRESKIN | JOHNSON | TOWNSEND PLLC
1000 Second Avenue, Suite 3670
Seattle, Washington 98104  Tel: 206-652-8660

1   Motion) at 2 (quoting McKay decl. Ex. 1 (loan document)). Opportunity also argues that

2   FinWise administers the loans through Opportunity. *Id.* at 16 (citing McKay decl. Exs. 1

3   at 3, 2 at 3, & 3 at 3). This, however, lends support to a finding that it is plausible that

4   Opportunity is the true lender or real party in interest in the loans and distinguishes the

5   *Krispin* decision. *See e.g. Madden*, 786 F.3d at 252 (distinguishing *Krispin* on the fact

6   that the national bank, not the non-bank, serviced the loan); *Ubaldi*, 852 F. Supp. 2d at

7   1200 (distinguishing *Krispin* based on the fact that the "bank issued the credit and

8   processed and serviced the accounts.")

9          Ms. Sanh's non-per se claims are plausible and should not be determined

10  preempted. Ms. Sanh does not bring a claim against any bank. Ms. Sanh's non-per se

11  CPA claims concern the non-bank Defendants' unfair and deceptive tactics of enticing

12  vulnerable consumer into high interest loans without proper disclosures. Complaint at p.

13  1, and pp. 4-5 ¶¶ 25 - 34. Ms. Sanh alleges an unfair rent-a-bank scheme aimed at

14  thwarting Washington's consumer protections by impermissibly attempting to borrow

15  FinWise's banking status. *Id.* at 1. She also alleges that Defendants have a significant,

16  if not the most significant, economic interest in the loan agreements. Complaint at ¶¶29,

17  34, 35. Viewed in a light most favorable to Ms. Sanh, these allegations make plausible

18  Ms. Sanh's claims under a true lender or real parties in interest analysis used by the

19  majority of court including those in this circuit. *See e.g. Madden*, 786 F.3d at 252; *Ubaldi*,

20  852 F. Supp. 2d at 1200; *and see* cases cited *supra* pp. 17-18. As this Court has pointed

21  out CPA claims of general applicability are not appropriately dismissed on a 12(b)(6)

22  motion based on banking law preemption "unless plaintiff's use of the law will

23  significantly impact the bank's lending powers." No such showing has been made.

24          Similarly, Ms. Sanh's per se CPA claims and her unjust enrichment claims

25  survive, because Defendants' are not banks. *See e.g. In re Cmty. Bank of N. Va.*, 418

26  F.3d at 296. Ms. Sanh's claims also survive because who the real parties in interest or

27  the true lenders are is a question of fact not properly decided here. *See e.g. Ubaldi*, 852

PLAINTIFF'S RESPONSE TO DEFENDANTS'
MOTION TO DISMISS UNDER RULE 12(b)(6) OR,
IN THE ALTERNATIVE, TO STAY PENDING
ARBITRATION - 16

BRESKIN | JOHNSON | TOWNSEND PLLC
1000 Second Avenue, Suite 3670
Seattle, Washington 98104  Tel: 206-652-8660

1   F. Supp. 2d at 1203 (expressing that the plaintiff's claims, including an unjust enrichment

2   claim, may not be preempted if the non-banks are the true lenders). Simply, because

3   the Complaint must be viewed in a light most favorable to Ms. Sanh, dismissal on

4   preemption grounds is not appropriate and allowing discovery to proceed is appropriate.

5       4. <u>The primary case relied upon by the Defendants is an outlier</u>

6      Dispensing with the weight of authority from district courts in the Ninth Circuit and

7   the balance of decisions from other Circuits, the Defendants argue for a preemption rule

8   whereby all claims against non-bank entities relating to loan with a state chartered

9   bank's name on are preempted. In support of their argument they cite to the Tenth Circuit

10  district court decision in *Sawyer v. Bill Me Later, Inc.*, 23 F. Supp. 3d 1359, 1367 (D.

11  Utah 2014). The *Sawyer* opinion is an outlier and it rest on a misreading of the Eighth

12  Circuit's decision in *Krispin*. "[N]umerous courts…have explained, the close relationship

13  between the bank and the store made *Krispin* a unique situation." *Colo. ex rel. Meade*,

14  2017 U.S. Dist. LEXIS 218763, at *24 (internal quotes omitted) (citing *In re Cmty. Bank*

15  *of N. Va.*, 418 F.3d at 296-97; *Flowers*, 307 F. Supp. 2d at 1194-95; *Ace Cash*, 188 F.

16  Supp. 2d at 1284-85.) In *Krispin*, the federally insured bank that originated the loan at

17  issue "was a wholly owned subsidiary of the [non-bank defendant]." *In re Cmty. Bank of*

18  *N. Va.*, 418 F.3d at 297 (quoting *Krispin*, 218 F.3d at 924). The district court in *Sawyer*

19  ignored this fact. The court also ignored that the Eighth Circuit only found preemption

20  after finding the "real party in interest is the bank, not the store." *Id.* at 924.

21  **E. Plaintiff's CPA claims are plausible**

22     The Court is familiar with the elements necessary to establish a CPA violation:

23  (1) unfair or deceptive act or practice; (2) occurring in trade or commerce; (3) public

24  interest impact; (4) injury to plaintiff in his or her business or property; (5) causation.

25  *Hangman Ridge Training Stables, Inc. v. Safeco Title Ins. Co.*, 105 Wn.2d 778, 780

26  (1986). A CPA claim may be predicated upon a per se violation of a statute or regulation,

27  an act or practice that has the capacity to deceive substantial portions of the public, or

PLAINTIFF'S RESPONSE TO DEFENDANTS'
MOTION TO DISMISS UNDER RULE 12(b)(6) OR,
IN THE ALTERNATIVE, TO STAY PENDING
ARBITRATION - 17

BRESKIN | JOHNSON | TOWNSEND PLLC
1000 Second Avenue, Suite 3670
Seattle, Washington 98104  Tel: 206-652-8660

1   an unfair or deceptive act or practice that violates the public interest. *Klem v. Washington*
2   *Mut. Bank*, 176 Wn.2d 771, 786 (2013).

3          The Complaint alleges each element of the CPA here, along with facts in support
4   thereof. There is no basis for dismissal under FRCP 12.

5          1.   <u>RISE misconstrues Washington law and ignores the plain language of the</u>
6               <u>complaint</u>

7          RISE claims that Plaintiff's non per se CPA claims should be dismissed under
8   FRCP 12 because she failed to allege injury and because she failed to allege any injuries
9   were proximately caused by RISE. Both are disproven by the plain language of the
10  Complaint.

11         Ms. Sanh alleged that RISE solicited her to enter into a loan agreement with
12  interest at 149.09% that would cost her three-times the loan amount. Complaint at ¶¶30-
13  33 ("Over the course of 48 payments, the loan of $3,000 will cost her $9,666.08."). She
14  contrasted the cost of this loan with the 12% interest rate allowed under Washington's
15  usury statute. *Id.* at ¶39. She alleged that the true cost of the loan was not adequately
16  disclosed to her and that as a result of this solicitation and inadequate disclosure, she
17  suffered injury under the CPA. *Id.* at ¶¶52-57. No more is required under the law and
18  RISE does not offer a single case holding otherwise. *See* Dkt. No. 31 at 18-19 (*citing*
19  *Goodwin Co. v. Nat'l Disc. Corp.*, 5 Wn.2d 521 (1940) and *Auve v. Fagnant*, 16 Wn.2d
20  669 (1943), decisions predating Washington's CPA by decades).

21         RISE argues instead that there can be no CPA injury if a plaintiff has "paid more
22  than she has received in loan principal." Dkt. No. 31 at 18. RISE contends that Ms. Sanh
23  received "almost ten-thousand dollars in loan principal from three lenders." *Id.* But there
24  is no accounting predicate to determining injury under the CPA and there certainly is no
25  basis in law to allow one defendant to amass a plaintiff's claims against other defendants
26  to evaluate CPA injury. RISE may be confusing injury with damages, a distinction the
27  Washington Supreme Court has recognized, and cautioned against. *Panag* at 58. The

PLAINTIFF'S RESPONSE TO DEFENDANTS'
MOTION TO DISMISS UNDER RULE 12(b)(6) OR,
IN THE ALTERNATIVE, TO STAY PENDING
ARBITRATION - 18

BRESKIN | JOHNSON | TOWNSEND PLLC
1000 Second Avenue, Suite 3670
Seattle, Washington 98104  Tel: 206-652-8660

Washington Supreme Court has also repeatedly and consistently rejected defendants' efforts to impose additional requirements to the CPA's elements. *Id.* at 38 (rejecting a sixth element to the CPA). Instead, the court has made clear that the business and property injuries compensable under the CPA "are relatively expansive." *Frias v. Asset Foreclosure Servs., Inc.*, 181 Wn.2d 412, 431-32 (2014). Monetary damages need not be proven to establish injury because an injury may not be quantifiable or may only be minimal and temporary. *Frias*, 181 Wn.2d at 431-32. *Panag*, in fact, rejected the idea that injury requires a payment of anything or hinges on a plaintiff being "induced to pay more than what is actually owed." 166 Wn.2d at 61.

RISE next claims that even if Ms. Sanh suffered injuries, they were caused by FinWise Bank, not RISE. Dkt. No. 31 at 20-21. But this is contrary to what is alleged, which is that as a "direct and proximate cause of Defendants' practices, Plaintiff and the members of the class she seeks to represent have suffered injury and damages[.]" Complaint at ¶57. No more is required to meet the pleading requirements of FRCP 12.

RISE's contention that a separate party caused her injury does not defeat Ms. Sanh's claims at this stage because there may be more than one proximate cause to an injury. *Indoor Billboard/Washington Inc. v. Integra Telecom of Wash.*, 162 Wn.2d 59, 82 (2007). And ultimately, it is a factual question to be decided by the trier of fact. *Id.* at 83. RISE challenge to causation has no merit.

RISE also challenges Plaintiff's per se CPA claim. This also fails, however, because the first two elements of Plaintiff's per se CPA claims elements are met by RISE, a non-bank entity, transacting in usurious loans. RCW 19.52.036; *see also Arneson v. Nordlund, No. 71148-2-I*, 2015 Wash. App. LEXIS 688, at *14 (Ct. App. Mar. 30, 2015) (citing RCW 19.52.020) (explaining that generally in consumer transactions loans above 12% interest are usurious and constitute per se CPA violations.) The remaining elements are met for the same reasons they are met in regards to Plaintiff's non-per se claims.

PLAINTIFF'S RESPONSE TO DEFENDANTS' MOTION TO DISMISS UNDER RULE 12(b)(6) OR, IN THE ALTERNATIVE, TO STAY PENDING ARBITRATION - 19

BRESKIN | JOHNSON | TOWNSEND PLLC
1000 Second Avenue, Suite 3670
Seattle, Washington 98104  Tel: 206-652-8660

2.   Opportunity fails to apply well-established precedent

Defendant Opportunity claims that Plaintiff's non per se claims should be dismissed under FRCP 12 because she has not met the particularity requirements of FRCP 9(b) and because the outrageous interest rates were adequately disclosed in loan documents. Dkt. No. 27 at 19-21. These arguments contradict CPA jurisprudence.

First, no Washington state court has ever ruled that a CPA claim is subject to the pleading standards of FRCP 9(b) or the CR 9(b) analog in Washington's civil rules. Opportunity offers no holding to the contrary. This is because the "CPA differs from traditional common law standards of fraud and misrepresentation." *Deegan v. Windermere Real Estate/Center-Isle, Inc.*, 197 Wn.App. 875, 884 (2017). A "central purpose of the CPA is to provide 'an efficient and effective method of filling in the gaps' in the common law and statutes." *Panag*, 166 Wn.2d at 54 (internal citation omitted) Indeed, as discussed above, the Washington Supreme Court has repeatedly rejected defendants' efforts to impose new elements and procedural hurdles to bringing CPA claims. *See Panag*, supra.

Opportunity relies only on unrelated federal cases, all of which involve a plaintiff alleging that the defendant made false statements about the content of the defendant's products. *See* Dkt. No. 27 at 20 (citing cases) (*Water & Sanitation Health, Inc. v. Rainforest All., Inc.*, (plaintiff claimed defendant falsely stated that its products were certified); *Fid. Mortg. Corp. v. Seattle Times Co.*, 213 F.R.D. 573, 575 (W.D.Wash. 2003) (plaintiff claimed defendant published "false" interest rates). One decision was based on the plaintiff's "fraud" claim and the other on an unrelated claim brough under California law. *See Dvornekovic v. Looney*, 2013 U.S. Dist. LEXIS 175309, *2 (W.D.Wash. Dec. 13, 2013) (applying Rule 9(b) to plaintiff's fraud claim); *Yumul v. Smart Balance, Inc.*, 733 F.Supp.2d 1117, 1122-23 (C.D.Cal. 2010). Ms. Sanh Complaint does not assert falsity, has not brought a fraud claim, and is not seeking relief under California's false advertising statute. These cases are inapposite.

PLAINTIFF'S RESPONSE TO DEFENDANTS'
MOTION TO DISMISS UNDER RULE 12(b)(6) OR,
IN THE ALTERNATIVE, TO STAY PENDING
ARBITRATION - 20

BRESKIN | JOHNSON | TOWNSEND PLLC
1000 Second Avenue, Suite 3670
Seattle, Washington 98104  Tel: 206-652-8660

Ms. Sanh has brought unfair and deceptive practice claims against Opportunity because it solicited her to enter into a loan agreement that earned interest at 159.15%. Complaint at ¶¶25-27. The thrust of her CPA claims is not that these solicitations were fraudulent or even false, but that they were deceptive under the CPA because they omitted essential information regarding the true costs of the loan, and they were unfair under the CPA because even if the true costs had been disclosed, the interest rate they were tethered to is outrageous. *Id.* at ¶¶42-46.

The terms unfair and deceptive are broadly construed and require consideration of all facts surrounding the acts and practices at issue. For instance, an act or practice is "deceptive" where it is misleading or misrepresents something of material importance, but the plaintiff does not need to prove that the defendant *intended* to deceive. *Panag v. Farmers Ins. Co. of Wash.*, 166 Wn.2d 27, 47 (2009). The plaintiff can prove that the act or practice had the capacity to deceive a substantial portion of the public from the perspective of a reasonable consumer. *Id.* at 47-50. Even accurate or truthful information may be deceptive. *Id.* at 50. When looking at specific language, the Court must look "not to the most sophisticated readers but the least." *Id.* (internal citation omitted). Similarly, an act or practice is "unfair" if it offends "public policy as established by 'statutes [or] the common law' or is 'unethical, oppressive, or unscrupulous, among other things." *Walker v. Quality Loan Serv. Corp.*, 176 Wn. App. 294, 318 (2013); *Mellon v. Reg'l Tr. Servs. Corp*. 182 Wn. App. 476, 490 (2014).

Washington courts have found the CPA is particularly appropriate for addressing deceptive communications that target Washington consumers through the mail. In *State v. LA Inv'rs LLC*, 2 Wn.App.2d 524 (2018), the Washington Court of Appeals affirmed a summary judgment order against a defendant for sending deceptive solicitations to consumers that appeared to be from a government agency or a bill. The court evaluated the full content of the mailer to determine that the "net impression" on a reasonable consumer was misleading in several ways. *Id.* at 54-41. It also rejected the defense that

PLAINTIFF'S RESPONSE TO DEFENDANTS'
MOTION TO DISMISS UNDER RULE 12(b)(6) OR,
IN THE ALTERNATIVE, TO STAY PENDING
ARBITRATION - 21

BRESKIN | JOHNSON | TOWNSEND PLLC
1000 Second Avenue, Suite 3670
Seattle, Washington 98104  Tel: 206-652-8660

1  any deception was cured by disclaimers. *Id.* at 544. *LA Inv'rs* is no anomaly. *See e.g.*

2  *Panag*, 166 Wn.2d at (applying the CPA's deceptive practice prong to communications

3  a series of mailings); *Deegan v. Windermere Real Estate/Center-Isle, Inc.*, 97 Wn.App.

4  875 (2017) (reversing dismissal of CPA claim for omission of facts).

5        Opportunity does not dispute Ms. Sanh's allegation that its solicitations were

6  deceptive and failed to disclose the true costs of the loan. *See* Dkt. No. 27 at 20-21. It

7  does not add further factual context to the circumstances surrounding the solicitations.

8  *Id.* And it does not even address Ms. Sanh's claim that its role in this scheme was unfair

9  under the CPA. Instead, Opportunity targets only the deceptive prong of the CPA and

10  contends that any deception contained in its communications to Ms. Sanh was cured by

11  disclaimers in the promissory notes that Ms. Sanh subsequently executed. *Id.* This

12  argument is not properly before the Court in a FRCP 12 motion.

13        And Opportunity has refused to respond to discovery seeking production of all

14  communications that were sent to Ms. Sanh. Donckers decl. at ¶3. Without this

15  information, there can be no evaluation of the "net impression" of its communications on

16  an ordinary consumer. It is unclear why Opportunity believes language in a document

17  that is not at issue and not crafted by Opportunity is exonerating. Given the hesitancy of

18  Washington courts to give credence to defendants' disclaimers and characterizations of

19  misleading content as "truthful," there is little reason to believe the language in FinWise

20  Bank's loan documents will give Opportunity refuge. But that issue will have to wait until

21  Plaintiff has conducted necessary discovery.

22        **F.  Plaintiff's Unjust Enrichment claim is plausible**

23        Unjust enrichment is the method of recovery for the value of the benefit retained

24  absent any contractual relationship because notions of fairness and justice require it.

25  *See Bailie Commc'ns, Ltd. v. Trend Bus. Sys., Inc.*, 61 Wn. App. 151, 160, 810 P.2d 12

26  (1991) ("Unjust enrichment occurs when one retains money or benefits which in justice

27

PLAINTIFF'S RESPONSE TO DEFENDANTS'
MOTION TO DISMISS UNDER RULE 12(b)(6) OR,
IN THE ALTERNATIVE, TO STAY PENDING
ARBITRATION - 22

BRESKIN | JOHNSON | TOWNSEND PLLC
1000 Second Avenue, Suite 3670
Seattle, Washington 98104  Tel: 206-652-8660

and equity belong to another."). Three elements must be established in order to sustain a claim based on unjust enrichment:

> a benefit conferred upon the defendant by the plaintiff; an appreciation or knowledge by the defendant of the benefit; and the acceptance or retention by the defendant of the benefit under such circumstances as to make it inequitable for the defendant to retain the benefit without the payment of its value." In other words the elements of a contract implied in law are (1) the defendant receives a benefit, (2) the received benefit is at the plaintiff's expense, and (3) the circumstances make it unjust for the defendant to retain the benefit without payment.

*Young v. Young*, 164 Wash. 2d 477, 484-85 (2008). Here, Plaintiff alleges facts that satisfy the elements of an unjust enrichment claim. Plaintiff alleges that Defendants receive some benefit from their rent-a-bank scheme and seeking to pass her off to a Utah bank which is immune from outrageous loans and subject to pointless personal arbitration. Defendants made money on the backs of exploiting Plaintiff's vulnerable financial status, like many other Washingtonians.

## IV.   CONCLUSION

For the foregoing reasons, Plaintiff requests that the Court deny Defendants' Motions to Dismiss and deny Defendant Opportunity's motion to compel arbitration. In the event the Court determines Plaintiff's complaint is deficient under FRCP 12, Plaintiff respectfully requests leave to amend under FRCP 15 and to be afforded the opportunity to conduct discovery.

DATED: June 22, 2020.

BRESKIN JOHNSON & TOWNSEND, PLLC

By: *s/Brendan Donckers*
Brendan W. Donckers, WSBA #39406
*s/Roger M. Townsend*
Roger M. Townsend, WSBA #25525
1000 Second Avenue, Suite 3670
Seattle, WA 98104
(206) 652-8660 Telephone
(206) 652-8290 Facsimile
bdonckers@bjtlegal.com
rtownsend@bjtlegal.com

PLAINTIFF'S RESPONSE TO DEFENDANTS'
MOTION TO DISMISS UNDER RULE 12(b)(6) OR,
IN THE ALTERNATIVE, TO STAY PENDING
ARBITRATION - 23

BRESKIN | JOHNSON | TOWNSEND PLLC
1000 Second Avenue, Suite 3670
Seattle, Washington 98104  Tel: 206-652-8660

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

LEONARD LAW

By: s/ *Sam Leanard*
Sam Leonard, WSBA #46498
1001 4th Avenue, Suite 3200
Seattle, WA 98154
(206) 486-1176 Telephone
sam@seattledebtdefense.com

*Attorneys for Plaintiff*

PLAINTIFF'S RESPONSE TO DEFENDANTS'
MOTION TO DISMISS UNDER RULE 12(b)(6) OR,
IN THE ALTERNATIVE, TO STAY PENDING
ARBITRATION - 24

BRESKIN | JOHNSON | TOWNSEND PLLC
1000 Second Avenue, Suite 3670
Seattle, Washington 98104  Tel: 206-652-8660