UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

SOPHEARY SANH,

    Plaintiff,

    v.

OPPORTUNITY FINANCIAL, LLC, *et al.*,

    Defendants.

NO. C20-0310RSL

ORDER GRANTING
OPPORTUNITY FINANCIAL'S
MOTION TO DISMISS

This matter comes before the Court on defendant Opportunity Financial, LLC's "Motion to Dismiss Under Rule 12(b)(6) or, in the Alternative, to Stay Pending Arbitration." Dkt. # 27. Plaintiff alleges, on behalf of herself and all others similarly situated, that Opportunity Financial solicits vulnerable consumers within the State of Washington for loan products but does not disclose in their solicitations that the loans have outrageous interest rates far in excess of that which is permitted under Washington's usury statute. Plaintiff alleges that she received solicitations from defendants, three non-bank entities, in March and April 2019 notifying her that she was pre-approved for a loan with an interest rate that would decrease over time and which was a "better way to borrow." Dkt. # 1-1 at ¶¶ 13 and 16. As a result of Opportunity Financial's communications, plaintiff entered into a $3,000 loan agreement with FinWise Bank, for which Opportunity Financial was compensated by FinWise. Dkt. # 1-1 at ¶¶ 25, 26, and 29.

ORDER GRANTING OPPORTUNITY
FINANCIAL'S MOTION TO DISMISS - 1

Plaintiff asserts state law claims under the Washington Consumer Protection Act ("CPA") and for unjust enrichment. Opportunity Financial seeks dismissal of all of plaintiff's claims on the grounds that they are subject to an arbitration agreement, are preempted, and/or do not state a claim for which relief can be granted.

In the context of a motion to dismiss for improper venue under Fed. R. Civ. P. 12(b)(3), the Court "need not accept all allegations in the complaint as true and may consider evidence outside the pleadings." *Kabukshikigaisha v. Agu Ramen, LLC*, 2019 WL 7499948, at *8 (D. Haw. Sept. 17, 2019) (citing *Murphy v. Schneider Nat'l, Inc.*, 362 F.3d 1133, 1137 (9th Cir. 2003)). Where defendant is seeking to compel arbitration, the Court "must consider evidence of the existence of an arbitration agreement" in order to make the threshold determinations of (1) whether a valid agreement to arbitrate exists and, if it does, (2) whether the agreement encompasses the dispute at issue. *Harbers v. Eddie Bauer, LLC*, 2019 WL 6130822, at *5 (W.D. Wash. Nov. 19, 2019); *Chiron Corp. v. Ortho Diagnostic Sys.*, Inc., 207 F.3d 1126, 1130 (9th Cir. 2000).

In the context of a motion to dismiss under Fed. R. Civ. P. 12(b)(6), the Court's review is generally limited to the contents of the complaint. *Campanelli v. Bockrath*, 100 F.3d 1476, 1479 (9th Cir. 1996). The question for the Court is whether the facts alleged in the complaint sufficiently state a "plausible" ground for relief. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

> A claim is facially plausible when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. Plausibility requires pleading facts, as opposed to conclusory allegations or the formulaic recitation of elements of a cause of action, and must rise above the mere conceivability or possibility of unlawful conduct that entitles

ORDER GRANTING OPPORTUNITY
FINANCIAL'S MOTION TO DISMISS - 2

the pleader to relief. Factual allegations must be enough to raise a right to relief above the speculative level. Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief. Nor is it enough that the complaint is factually neutral; rather, it must be factually suggestive.

*Somers v. Apple, Inc.*, 729 F.3d 953, 959-60 (9th Cir. 2013) (internal quotation marks and citations omitted). All well-pleaded factual allegations are presumed to be true, with all reasonable inferences drawn in favor of the non-moving party. *In re Fitness Holdings Int'l, Inc.*, 714 F.3d 1141, 1144-45 (9th Cir. 2013). If the complaint fails to state a cognizable legal theory or fails to provide sufficient facts to support a claim, dismissal is appropriate. *Shroyer v. New Cingular Wireless Servs., Inc.*, 622 F.3d 1035, 1041 (9th Cir. 2010).

Having considered the Complaint and the memoranda, declarations, and exhibits submitted by the parties, and having heard the arguments of counsel, the Court finds as follows:

**A. Arbitration**

Between April and August 2019, plaintiff entered into three loan agreements with FinWise Bank C/O Opportunity Financial, LLC. Each successive loan paid the outstanding balance on the previous loan and provided a few hundred dollars directly to plaintiff. All three loan agreements contained an "Arbitration Clause" consisting of a series of questions and answers describing arbitration, its procedures, and its limitations. The clause governs all "claims," which is defined to have "the broadest reasonable meaning" and includes "all claims even indirectly related to your application, the loan, this Note and your agreements with us. . . . It includes all past agreements. It includes extensions, renewals, refinancings or payment plans." Dkt. # 28-1 at 13; Dkt. # 28-2 at 13; Dkt. # 28-3 at 13. "Us," for purposes of the promise to arbitrate, includes FinWise's successors, assigns, and related third-parties "who have provided

ORDER GRANTING OPPORTUNITY
FINANCIAL'S MOTION TO DISMISS - 3

services in connection with any loan to you, including [Opportunity Financial]." *Id.* The arbitration provision also includes a notice and cure requirement (Dkt. # 28-1 at 15; Dkt. # 28-2 at 15; Dkt. # 28-3 at 15) and an opt-out provision (Dkt. # 28-1 at 17; Dkt. # 28-2 at 17; Dkt. # 28-3 at 17). Plaintiff timely notified FinWise that she was opting out of the arbitration provision contained in the third loan agreement.

Opportunity Financial maintains that the arbitration provisions of the first and second note remain in effect because the parties did not "sign an agreement stating it doesn't" and because the arbitration clause states that it covers refinancings and will remain in effect regardless of prepayment, performance, or amendment. Dkt. # 28-1 at 15; Dkt. # 28-2 at 15; Dkt. # 28-3 at 15.[1] Plaintiff points out, however, that the parties' subsequent written agreement provided that it was "the final and complete expression of the agreement between you and us" (Dkt. # 28-1 at 11; Dkt. # 28-2 at 11; Dkt. # 28-3 at 11) and argues that when she opted out of the arbitration clause in that agreement, she ended her obligation to arbitrate any and all "claims" as defined in that provision.

The Ninth Circuit recently considered a similar issue in *Stiner v. Brookdale Senior Living, Inc.*, 810 F. App'x 531 (9th Cir. 2020). The district court had denied the senior living community's motion to compel one of its residents, Helen Carlson, to arbitrate after finding that an earlier agreement to arbitrate was no longer enforceable because the resident had entered into a new residential agreement and opted out of the arbitration provision contained therein. The

---

[1] During oral argument, Opportunity Financial argued that Ms. Sanh's claims against it arise solely out of the second note and, therefore, the arbitration provision of that note governs. If an arbitration provision applies, however, it is because FinWise included it in its contract with plaintiff. As discussed in the text, only the arbitration provision contained in the third note remained in play, and plaintiff successfully opted out.

ORDER GRANTING OPPORTUNITY
FINANCIAL'S MOTION TO DISMISS - 4

Ninth Circuit affirmed:

> In 2017, Carlson's legal representative and power of attorney signed her most recent agreement, which "constitute[d] the entire agreement between the parties and supersede[d] all prior and contemporaneous discussions, representations, correspondence, and agreements whether oral or written." In that agreement, Carlson opted out of arbitration. According to the terms of the agreement, it applied to "[a]ny and all claims or controversies arising out of, or in any way relating to, this Agreement or [Carlson's] stay at [Brookdale] ... whether existing or arising in the future."
>
> In California, a court's interpretation of a contract begins and ends with the language if the language is "clear and explicit." Cal. Civ. Code § 1638; *see also Bank of the W. v. Superior Court*, 2 Cal.4th 1254, 10 Cal.Rptr.2d 538, 833 P.2d 545, 552 (1992). Here, Carlson's 2017 residency agreement clearly covered any claims she may have had against Brookdale, including those existing at the time Carlson's representative signed the agreement. Accordingly, we affirm the district court's denial of Brookdale's motion to compel arbitration as to Carlson.

*Stiner*, 810 F. App'x at 533-34.

A similar outcome is appropriate here. Under Washington law, the purpose of contract interpretation is to ascertain the intention of the contracting parties, and the task is to be accomplished "by viewing the contract as a whole, the subject matter and objective of the contract, all the circumstances surrounding the making of the contract, the subsequent acts and conduct of the parties to the contract, and the reasonableness of respective interpretations advocated by the parties." *Berg v. Hudesman*, 115 Wn.2d 657, 663, 667 (1990) (quoting *Stender v. Twin City Foods, Inc.*, 82 Wn.2d 250, 254 (1973)). Plaintiff and FinWise entered into a series of loan documents, each declaring itself to be the complete expression of the parties' agreement and containing an arbitration clause that applied to all claims, past and future. The claims covered by the third arbitration clause specifically included "all past agreements." Her previous

ORDER GRANTING OPPORTUNITY
FINANCIAL'S MOTION TO DISMISS - 5

promises to arbitrate were therefore superceded by the third arbitration clause, from which plaintiff timely and effectively opted out. As was the case in *Stiner*, Opportunity Financial's motion to compel arbitration must be denied for lack of an enforceable promise to arbitrate.[2]

**B. Federal Preemption**

Plaintiff asserts two claims under the CPA and a separate claim for unjust enrichment. Plaintiff's first CPA claim is based on allegations that Opportunity Financial engaged in unfair and deceptive practices when it targeted vulnerable Washington consumers with solicitations for pre-approved loans that failed to disclose the outrageous and usurious costs associated with the loans. Plaintiff also asserts a *per se* CPA claim arising out of Opportunity Financial's alleged violation of Washington's usury statute, RCW 19.52.020. Plaintiff's unjust enrichment claim is based on supposed benefits Opportunity Financial received when it was able to convince Washington consumers, like plaintiff, to enter into a loan agreement. Opportunity Financial argues that all three claims are preempted by the Depository Institutions Deregulation and Monetary Control Act of 1980 ("DIDA"), 12 U.S.C. § 1831d, which allows federally-insured, state-chartered banks like FinWise to export the interest rate allowed by their home state to the national market. DIDA expressly preempts "any State constitution or statute" which would require a lower interest rate, such as Washington's usury law. 12 U.S.C. § 1831d(a).

Plaintiff's *per se* CPA claim undoubtedly relies on the preempted state usury law. Plaintiff argues, however, that Opportunity Financial is not a bank entity and therefore not entitled to claim DIDA preemption. The preemptive effect of 12 U.S.C. § 1831d, like its

---

[2] Opportunity Financial further argues that plaintiff's claims should be dismissed for failure to comply with the pre-suit notice requirement set forth in the loan agreements. That requirement is an element of Paragraph 22, the "Arbitration Clause," from which plaintiff opted out.

ORDER GRANTING OPPORTUNITY
FINANCIAL'S MOTION TO DISMISS - 6

precursor in the National Bank Act of 1864 ("NBA"), extends not only to the bank that issues the loan or extends the line of credit, but also to the affiliates, assignees, servicers, and secondary markets that carry the obligation to term on behalf of or in place of the original lender. *See Krispin v. May Dep't Stores Co.*, 218 F.3d 919, 924 (8th Cir. 2000) (NBA preemption applies if the originating entity is a bank, even if subsequent assignees are non-bank entities); *FDIC v. Lattimore Land Corp.*, 656 F.2d 139, 147-49 (5th Cir. 1981) (when determining whether the NBA governs a loan assigned by an originating bank to an entity in another state, "[t]he non-usurious character of a note should not change when the note changes hands"); *Barnett v. T.D. Escrow Servs., Inc.*, 2005 WL 1838623, at *1 (W.D. Wash. Aug. 1, 2005) (finding that usury claims against loan servicing agents are preempted by DIDA). *See also* Dkt. # 41 at 3-4 (FDIC Final Rule re: Federal Interest Rate Authority, dated June 5, 2020, clarifying that banks can transfer enforceable rights in loans they make under the preemptive authority of the NBA and noting that DIDA is patterned after and interpreted in the same way as the NBA). Thus, Washington's usury statute, which does not apply to a high interest rate loan made by a federally-insured, state-chartered bank like FinWise, does not spring back into force if the loan is serviced by or conveyed to a non-bank entity like Opportunity Financial.

Plaintiff argues, however, that FinWise was not the true lender in the circumstances presented here and that Opportunity Financial is the real-party-in-interest. In this narrative, Opportunity Financial simply co-opted or rented FinWise's name so that it could affix it to the loan documents, acquire DIDA preemption, and evade Washington's efforts to regulate the interest rates charged its citizens. Where a non-bank entity has extended a loan, there is no state-chartered bank, there is no issue of federal insurance, and state regulation of such loans would not adversely impact a banking entity's ability to lend: DIDA preemption would therefore not

ORDER GRANTING OPPORTUNITY
FINANCIAL'S MOTION TO DISMISS - 7

apply. 12 U.S.C. § 1831d(a) (preventing discrimination against state-chartered insured depository institutions); *Ubaldi v. SLM Corp.*, 852 F. Supp.2d 1190, 1203 (N.D. Cal. 2012) (declining to dismiss usury claim where plaintiff alleged that the national bank named in the loan documents was not the actual lender). *See also* Dkt. # 41 at 5 (FDIC Final Rule re: Federal Interest Rate Authority, dated June 5, 2020, recognizing the "real party in interest" argument and noting that "the FDIC continues to support the position that it will view unfavorably entities that partner with a State bank with the sole goal of evading a lower interest rate established under the law of the entity's licensing State(s)"). The problem is not with plaintiff's "true lender" or "real party in interest" theory of liability, but with the allegations of the complaint. At no point does plaintiff allege, even in a conclusory fashion, that Opportunity Financial was the lender in her loan transactions. To the contrary, plaintiff alleges that Opportunity Financial's role was to generate leads for loans from FinWise, that she entered into a series of loan agreements with FinWise, and that Opportunity Financial made money on the transaction by receiving compensation from FinWise on a per loan basis (not through receipt of interest payments). Dkt. # 1-1 at 1 and ¶¶ 25-26, 29, and 73-74. Given the allegations of the complaint, plaintiff's *per se* CPA claim is preempted under DIDA.

**C. Plausible Claim for Relief**

The Court assumes for purposes of this motion that some portion of plaintiff's non-*per se* CPA and unjust enrichment claims are based on conduct other than the interest rate charged in the loan agreements. To that extent, these claims would not be preempted.[3] They nevertheless

---

[3] If, for example, Opportunity Financial's solicitations included misrepresentations regarding the fees associated with the proposed transaction or a false promise of a free car upon signing, a CPA claim having nothing to do with the interest rate might survive the preemptive effect of DIDA.

ORDER GRANTING OPPORTUNITY
FINANCIAL'S MOTION TO DISMISS - 8

fail because the allegations of the complaint do not give rise to a plausible inference that Opportunity Financial could be held liable on either claim.

1. Unfair and Deceptive Act or Practice

Plaintiff alleges that "defendants," collectively, made statements regarding pre-approval, decreasing interest rates, and the relative benefits of the loan products on offer when attempting to convince plaintiff to borrow money. It is unclear, however, what representations Opportunity Financial made or how they were misleading. Rather than identify a specific unfair or deceptive statement made by this defendant, plaintiff argues that any loan solicitation that does not disclose the interest rate (or which discloses an interest rate that is outrageously high) is deceptive. Dkt. # 38 at 23. While the terms "unfair" and "deceptive" are broadly construed in the context of a remedial statute like the CPA, plaintiff makes no effort to explain how the advertisement she posits could mislead a reasonable consumer, much less a substantial portion of the consuming public. An offer to lend funds at an unspecified interest rate, without more, is not inherently misleading. A critical piece of information would obviously be missing, but there is no misrepresentation of fact: a consumer could not reasonably suppose that he or she knew what the undisclosed term would ultimately be. Nor is it clear how an offer to lend funds at an interest rate of 160% is confusing, deceptive, or misleading. In the absence of additional information regarding the form, content, and context of Opportunity Financial's solicitations, plaintiff has failed to raise a plausible inference of liability under the CPA.

2. Unjust Enrichment

Plaintiff argues that Opportunity Financial was unjustly enriched by the amount of the payments it received from FinWise in exchange for its services in locating borrowers and instigating the loans. The first element of an unjust enrichment claim requires that the benefit be

ORDER GRANTING OPPORTUNITY
FINANCIAL'S MOTION TO DISMISS - 9

conferred upon the defendant by the plaintiff or at the plaintiff's expense. *Young v. Young*, 164 Wn.2d 477, 484 (2008). Plaintiff does not allege that she paid any fees to Opportunity Financial or that the compensation paid by FinWise was at plaintiff's expense. Absent such allegations, the unjust enrichment claim is not plausible.

For all of the foregoing reasons, defendant Opportunity Financial's motion to dismiss is GRANTED. Plaintiff's *per se* CPA claim is preempted by DIDA, and the allegations of the complaint do not give rise to a plausible inference of liability under a non-*per se* CPA or unjust enrichment theories. All claims against Opportunity Financial are therefore DISMISSED. If plaintiff believes she can, consistent with her Rule 11 obligations, amend the complaint to remedy the pleading and/or legal deficiencies identified above, she may, on or before January 26, 2021, file a motion to amend and attach a proposed pleading for the Court's consideration pursuant to LCR 15.

Dated this 12th day of January, 2021.

Robert S. Lasnik
United States District Judge

ORDER GRANTING OPPORTUNITY
FINANCIAL'S MOTION TO DISMISS - 10